```
                       UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF OHIO
                             EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )  Case No. 5:20-cr-297-DCN
            Plaintiff,           )
                                 )  Cleveland, Ohio
       vs.                       )  Tuesday, August 2, 2022
                                 )  12:00 p.m.
MATTHEW SLATZER,                 )
                                 )  SUPERVISED RELEASE VIOLATION
            Defendant.           )  HEARING VIA VIDEOCONFERENCE
_____ )



                  REPORTER'S TRANSCRIPT OF PROCEEDINGS

                 BEFORE THE HONORABLE DONALD C. NUGENT,
                   SENIOR UNITED STATES DISTRICT JUDGE



   APPEARANCES:

   For the Plaintiff:

         OFFICE OF THE U.S. ATTORNEY - AKRON
         BY:  TONI B. SCHNELLINGER FEISTHAMEL, AUSA
         2 South Main Street
         208 Federal Building
         Akron, OH 44038
         (330) 761-0531

   (Appearances continued on Page 2)

   COURT REPORTER:

         Heather K. Newman, RMR, CRR
         U.S. District Court, Northern District of Ohio
         801 West Superior Avenue, Court Reporters 7-189
         Cleveland, OH 44113
         (216) 357-7035 or heather_newman@ohnd.uscourts.gov

   Proceedings reported by machine shorthand; transcript
   produced by computer-aided transcription.
```

1   APPEARANCES CONTINUED:

2   For the Defendant:

3       OFFICE OF THE FEDERAL PUBLIC DEFENDER - AKRON
        BY:  ALVARO DeCOLA, AFPD
4       50 SOUTH MAIN STREET, SUITE 700
        AKRON, OH 44308
5       (330) 375-5739

6   Also present:

7       Jennifer Burke
        Eric Sampson
8       United States Pretrial Services and Probation Office.

9

10                      \*   \*   \*   \*   \*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1            CLEVELAND, OHIO; TUESDAY, AUGUST 2, 2022; 12:00 P.M.
2                                --oOo--
3                           P R O C E E D I N G S
4            THE COURT:  We're here in Case Number
5    20-cr-297.  It's titled United States vs. Matthew Paul
6    Slatzer.
7            COURTROOM DEPUTY:  He just fell off.
8            THE COURT:  Well, there you go.
9            COURTROOM DEPUTY:  Mr. Slatzer fell off.
10       I know I saw him for a second.
11       (Brief pause in proceedings).
12           THE COURT:  Now we're ready; right?
13           COURTROOM DEPUTY:  Yeah, it's just connected.
14           THE COURT:  Okay.  Mr. Slatzer, can you hear
15   me?
16           THE DEFENDANT:  Yes, sir.  I was trying to
17   figure out the audio.
18           THE COURT:  Yeah.  Somehow you dropped off.  I
19   don't know.
20       What happened to that beard?
21           THE DEFENDANT:  Oh, I shaved it off.
22           THE COURT:  Okay.  You look like a different
23   guy.
24           THE DEFENDANT:  Yeah.
25           THE COURT:  Okay.  We're here in Case Number
```

1  20-cr-297.  It's titled United States vs. Matthew Paul
2  Slatzer and we're here for an allegation of supervised
3  release violation.  And we have -- we're doing this by video
4  for COVID reasons.
5      And we have participating here the -- Mr. Slatzer.
6  You're at home -- right? -- Matthew?
7           THE DEFENDANT:  Correct.
8           THE COURT:  All right.  And we have his
9  attorney, Mr. Alvaro DeCola; as well as the United States
10 Attorney, Ms. Toni Schnellinger Feisthamel; and we have two
11 representatives of the Probation Department, Jennifer Burke
12 and Eric Sampson; and we also have the court reporter,
13 Ms. Heather Newman.
14     Now, the -- as you should know, Mr. Slatzer, the
15 Probation Department is under an obligation under orders of
16 the Court if there's any potential violation to the terms of
17 supervised release they are required to notify me.  And I
18 received a notification that you had gone to your
19 girlfriend's house against the directives of the supervising
20 probation officer and if that, in fact, is true, that could
21 be a violation of the terms of supervision, and there's some
22 other issues that have raised its ugly head as well, so
23 that's why we're here.
24     You understand that?
25          THE DEFENDANT:  Yes.

1   THE COURT: Okay. Then, Mr. DeCola, what is
2   your pleasure, sir?
3   MR. DeCOLA: Judge, good afternoon. I -- I
4   have reviewed the allegation with Mr. Slatzer, and he admits
5   that he did go to her house. However, he tells me that at
6   the time there was no Restraining Order or Protection Order
7   of any sort and -- you know, so, if anything, he admits that
8   he went to his -- to her house.
9   THE DEFENDANT: To see my kids. Not to see
10  her.
11  THE COURT: No. I got that.
12     (Simultaneous crosstalk).
13  THE COURT: You can't do it without the
14  express -- hang on.
15     Do you have a court order on that or anything? Is
16  there -- on your -- were you married to this lady?
17  THE DEFENDANT: No. We just have children in
18  common.
19  THE COURT: All right. Is there a domestic
20  relations order on custody or visitation or anything?
21  THE DEFENDANT: So I have a court date coming
22  up August 8th in regards to visitation. I was just trying
23  to make a final attempt to. . . see my kids without going
24  through the court.
25  THE COURT: No. I get you.

1  So you're telling me that the way it's situated right
2  now is that your ex-girlfriend has custody of the two
3  children?
4  THE DEFENDANT: Correct.
5  THE COURT: And that there's no domestic
6  relations order on visitation?
7  THE DEFENDANT: No.
8  THE COURT: So you were just doing it how you
9  two would have come to an agreement on it?
10  THE DEFENDANT: Correct.
11  THE COURT: Well, did you file something in
12  domestic relations or did she?
13  THE DEFENDANT: I did.
14  THE COURT: All right. So you have a hearing
15  on August the 8th --
16  THE DEFENDANT: Yes.
17  THE COURT: -- is that right?
18  THE DEFENDANT: Yes, sir.
19  THE COURT: Do you have a lawyer for that?
20  THE DEFENDANT: No. I can't afford one.
21  THE COURT: Okay. So you're going to go
22  there, and what do you want to be the outcome?
23  THE DEFENDANT: I would like to see my kids on
24  a regular basis and establish a good rapport and a good
25  relationship with them.

1        THE COURT:  Okay.  So you're just hoping that
2    the Domestic Relations Court will issue some type of
3    visitation order so you can have regular -- or you know when
4    the times are that you can be with your children?
5        THE DEFENDANT:  Yes, sir.
6        THE COURT:  How old are they?
7        THE DEFENDANT:  My son's 8 and my daughter is
8    12.
9        THE COURT:  Okay.  Do you pay support?
10       THE DEFENDANT:  Not yet.
11       THE COURT:  Well, you better start paying
12   support.  I'm not sure how much the -- domestic relations is
13   going to take that if you're not paying anything to support
14   them.
15       Well, you know that.
16       THE DEFENDANT:  Yeah.
17       THE COURT:  Okay.  All right.  But, anyway,
18   there was a -- this is a note that I have.  I guess it was
19   just a bad idea because according to the information that
20   was gathered by the Probation Department is that your ex had
21   previously informed you that she wanted no contact and
22   blocked your phone number and she claims that she's afraid
23   of you and so she wants no contact.  So until there's a
24   different order of the court from the domestic relations,
25   which I have to say doesn't supersede any order that I would

1	issue here today, but you have a -- there's a No Contact
2	Order in effect until there may be some change in domestic
3	relations and if there is, then Ms. Burke or Mr. Sampson can
4	notify me and I can decide whether I'm going to modify my
5	order.
6	        Are you with me on that, Matt?
7	            THE DEFENDANT:  Yes, sir.
8	            THE COURT:  Okay.  And the other thing is,
9	what are you painting on all these signs and whatnot on your
10	house?
11	            THE DEFENDANT:  So the artwork was removed.  I
12	know it says in the. . . violation report that it was
13	removed July 14th.  That was either a misprint on the
14	Probation end, but it was removed July -- or June 13th -- or
15	June 14th.  I apologize.
16	            THE COURT:  Okay.  Now, here, the problem is
17	that comes as a result of that, especially in the times that
18	we're living in, you're entitled to your own personal
19	opinion, no question about that, but if you're on
20	supervision in federal court, you can't express that, pardon
21	me, or associate with people who pledge any kind of
22	anti-Semitic or anti-Black or anti-LGBTQ activity because
23	you're on supervision.  In other words, you have to live
24	like Caesar's wife while you're on supervision.  If you
25	don't understand that, Jennifer will explain it to you, what

1 that means.

2 But I'm going to continue you on supervision, but you
3 do have a contact restriction and I'm going to modify the
4 terms of supervision in that way. You also have to
5 submit -- you're subject to a computer-monitoring search at
6 the discretion of the -- your supervising officer.

7 And the only last thing I'm going to say is that, you
8 know, you have to also participate -- and, now, this is a
9 new thing for me, but it's in a de-radicalization program
10 and so that -- the only thing I'm going to suggest to you,
11 Matt, is follow up with what your probation officer says.
12 There's nothing bad in there, it's all good, it's all
13 positive. If you take advantage of it, it may give you some
14 insight about yourself and hopefully keep your children safe
15 and your ex safe.

16 But any violation of these orders, the Probation
17 Department, either Mr. Sampson or Ms. Burke, or otherwise,
18 has an obligation to notify me immediately.

19 And my initial reaction normally to these violations
20 is that I issue a warrant because I figure if somebody's on
21 supervision and they may be violating a term or condition of
22 supervision, then I got to get them locked up as soon as
23 possible so there's no harm done in the future. The
24 Probation Department didn't ask -- asked me not to do that.
25 They think you have a -- you -- there's a lot of positive in

1  you so they said don't -- don't lock him up at this point
2  anyway, just send a summons, and so that's what I did.  And
3  sometimes it's against my better judgment, but this time I
4  followed their advice.  So the only thing I'm saying to you,
5  Matt, is pay attention to what your supervising officers say
6  and also pay attention to what Mr. DeCola tells you and we
7  won't have a problem.
8          Does that sound reasonable?
9                  THE DEFENDANT:  Yes.  Sounds reasonable.
10                 THE COURT:  Okay.  And are you --
11 Probation Department will go over all the stuff with you and
12 then if there's -- something changes about the No Contact
13 Order from domestic relations, Ms. Burke or Mr. Sampson will
14 notify me right away and if there's a -- that calls for a
15 modification in your supervision order, I'll take that under
16 consideration right away.  Okay?
17     So let them know what's going on with that.
18                 THE DEFENDANT:  So just real quick.  You know,
19 it says White Lives Matter is a hate group.
20                 THE COURT:  Say that again.
21                 THE DEFENDANT:  It says in the violation
22 report that White Lives Matter is a designed hate group.
23                 THE COURT:  You know, I'm sorry, I didn't
24 quite hear you again.
25                 THE DEFENDANT:  It says in the violation

1    report that White Lives Matter is a designed hate group.
2             THE COURT:  Yeah, I don't think that is.  I
3    don't.
4             THE DEFENDANT:  Well --
5             THE COURT:  I am with you on that in that
6    regard.  I don't know how one group can say that they're pro
7    something and another group, they say the same thing, it's
8    somehow a hate group.  No, it's not.
9             THE DEFENDANT:  Okay.  So White Lives Matter
10   I'm allowed to --
11       (Simultaneous crosstalk).
12            THE COURT:  Yes.
13            THE DEFENDANT:  -- stand with the sign that
14   says White Lives Matter.
15            THE COURT:  Yeah.  I didn't even know there
16   was such a group.
17            THE DEFENDANT:  Yeah.  Okay.
18            THE COURT:  I mean, that's kind of like, as
19   they say, blue lives matter, police lives matter.  Some
20   people say that's a hate group.  Well, they should have
21   their head examined for saying that.
22            THE DEFENDANT:  Right.
23        And then the signs I have up there are political in
24   nature.  They just have politicians that happen to be Jewish
25   on them.

1       THE COURT:  I know, but --
2       THE DEFENDANT:  It's not anti-Semitic.
3       THE COURT:  It's not?
4       THE DEFENDANT:  They're just politicians.
5       THE COURT:  Where are they politicians?
6       THE DEFENDANT:  They're senators and
7   different -- I can show you the signs if you want.
8       THE COURT:  But, I mean -- but they're all
9   Jewish; right?
10      THE DEFENDANT:  Well, they -- yeah.  I mean,
11  they are Jewish.
12      THE COURT:  Yeah.  I -- you got to take -- you
13  got to take those down.
14      THE DEFENDANT:  Okay.
15      PROBATION OFFICER BURKE:  Your Honor. . .
16      THE DEFENDANT:  Will do.
17      PROBATION OFFICER BURKE:  We have identified
18  the current White Lives Matter as a white supremacist group.
19  It's on the Southern Poverty Law Center website as an
20  identified --
21      THE COURT:  Well, I -- Toni [sic], I'm going
22  to stop you right there.  Southern Poverty Law Center is one
23  of the most vocal hate groups I've ever come across so I
24  take nothing what they say.
25      PROBATION OFFICER BURKE:  Thank you, Judge.

1  And in terms of the posters on his house, they're
2  pretty offensive.  They're not benign posters.
3            THE COURT:  Yeah.  He's going to take them
4  down.
5            PROBATION OFFICER BURKE:  Thank you,
6  Your Honor.
7            THE COURT:  Yeah.  And, Ms. Burke or
8  Mr. Sampson, if there's any issues or any difficulty coming
9  up, just let me know.
10           PROBATION OFFICER BURKE:  Yes, Judge.
11           THE COURT:  Okay, folks.  I appreciate your
12 patience with us.
13       Thank you.
14           PROBATION OFFICER BURKE:  Thank you.
15    (Proceedings adjourned at 12:14 p.m.)
16
17            **C E R T I F I C A T E**
18    I certify that the foregoing is a correct transcript
   of the record of proceedings in the above-entitled matter
19 prepared from my stenotype notes.
20      */s/ Heather K. Newman*              9-2-2022
        HEATHER K. NEWMAN, RMR, CRR                DATE
21
22
23
24
25